# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| LINDA G. LINDAMOOD, | |
| *Plaintiff* | Civil Action No. 5:10cv00033 |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| *Defendant* | By: Hon. James G. Welsh<br>U. S. Magistrate Judge |

Plaintiff, Linda Lindamood, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act.  42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 et seq. respectively.  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On August 10, 2010 the Commissioner filed his Answer along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision.  By an order of referral entered on August 11, 2010, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The matter having now been briefed by

the parties and argument of counsel having been heard, the following report and recommended disposition is submitted.

**I.     Summary**

The plaintiff in this case was sixty years of age at the time of her alleged January 1, 2006 disability onset date.[1] (R.11,29,182,204,236.)  She attended school only through the 8th grade,[2] and her past relevant work included jobs as an eviscerator in a poultry plant for ten years, a seamstress in a clothing factory for several years, an aide in a nursing home for several months, an adult caretaker for approximately five years and a companion/personal aide on one occasion. (R.29,31-36,175,179,196-203.)

As outlined in her disability reports, in her hearing testimony and in the medical record, the plaintiff's basic contention is that she is no longer able to engage in competitive work activity due to the combined effects of uncontrolled diabetes with attendant nervousness, anxiety and sleep problems, arthritis and associated pain, depression, asthma and breathing difficulties. (R.86-188,193-195,212,231,234-235.)  Concluding that she retained the functional capacity to perform her past work as a companion/personal aide, the plaintiff's claim was denied by written

---

[1] The agency's regulations, recognize that the age of a *person of advanced age*(*age* 55 or older) significantly affects the ability to adjust to other work, and special rules are used by the agency for persons in this category and "for persons in this category who are closely approaching retirement age (*age* 60-64).  20 C.F.R. § 404.1563(e) and § 416.963(e).  *See* 20 C.F.R. § 404.1568(d)(4) and §416.968(d)(4).

[2] Pursuant to the agency's regulations a person with a 7th grade through the 11th grade formal education has a limited education, meaning an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R.§ 404.1564(b)(3) and § 416.920(c).

decision following an administrative hearing. After a careful review of the full record, the undersigned is constrained to conclude that substantial evidence does not support the agency's non-disability finding.

## II. Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than de novo. "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d at 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (quoting *Craig*, 76 F.3d at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed de novo. *Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000).

**III.    Administrative History**

The record shows that the plaintiff protectively filed her current applications on March 24, 2006 alleging disability as of January 1, 2006.[3] (R.1,149-158,166.) Her applications were denied both initially and on reconsideration. (R.11,102-124.) Pursuant to the plaintiff's timely request, an administrative hearing on her applications was held on November 15, 2007 before an administrative law judge ("ALJ"). (R.11.125,133.) At the hearing, the plaintiff was present; she testified, and she was represented by counsel. (R.11,22-23,29-65,126-127.) Testimony in support of the plaintiff's applications was given by her social worker and by her sheltered workshop supervisor. (R.65-80.) Vocational testimony was given by Patricia Versa. (R.80-90,140,143-144.) By written decision dated November 30, 2007 the plaintiff's applications were once again denied. (R.11-21.) Following her request for appeal request and submission of additional medical records covering the period between November 22, 2006 and January 5, 2010 (R.350-360,366,368-384,400-421,427,429-445,462-479,486-494,496-497,499-500-504,507-525,538-543,550-583) documenting her on-going medical care, the plaintiff's request for Appeals Council review was denied. (R.1-5,7-8.) The ALJ's unfavorable decision, therefore, now stands as the Commissioner's final decision. See 20 C.F.R. § 404.981.

**IV.    Facts**

---

[3] The record shows the plaintiff previously filed a Title II application alleging that she became disabled on May 23, 2002 due to diabetes, high blood pressure and limited use of her left hand. It was subsequently denied by administrative hearing-level decision dated January 27, 2005. (R.11,95-98.)

Treatment notes from Broadway Family Practice variously dated between November 1997 and December 2004 document the plaintiff's treatment for a number of transient medical problems and several chronic conditions, including hypertension, type-2 diabetes, persistent back pain, right shoulder pain, pleural symptoms, glucose intolerance and an abnormal blood lipid condition. (R.275-289.)

When seen for a consultive medical examination by Chris Newell, M.D., in September 2005, the plaintiff reported having been diabetic for about ten years and having chronic back pain with attendant bilateral hip/buttock pain and sciatic numbness. (R.290.) On examination, Dr. Newell found the plaintiff to exhibit bilateral vertebral muscle spasms, tenderness of the sacroiliac joints, and limitation of back flexion. (R.292.) Based on his clinical findings, Dr. Newell concluded the plaintiff retained the functional ability to stand and walk at least four hours during a normal work day, occasionally perform postural movements, and regularly lift and carry ten and occasionally twenty pounds. (*Id.*)

On March 28, 2006 the plaintiff began to receive her medical care through the Harrisonburg-Rockingham Free Clinic, because she had no health insurance coverage. (R.48,330.) Through November 7, 2006 she was seen approximately five additional times and treated for "uncontrolled" diabetes, depression, left shoulder pain, asthma symptoms, hyperlipidemia, and polycythemia. (R.316-324,328-330.) Radiographic studies at Rockingham Memorial Hospital in April and in August of the same year demonstrated degenerative arthritis involving both the plaintiff's left acromioclavicular joint and her dorsal spine. (R.325-326.)

Based on perceived "inconsistencies with the totality of the evidence in the file," a state agency reviewer on August 31, 2006 discounted Dr. Newell's assessment of the plaintiff's standing/walking and postural limitations and concluded that the record supported a determination that the plaintiff retained the ability to perform a full range of light work.[4] (R.308-315.) Using precisely the same verbiage as the ostensible basis for a similar discount of the Dr. Newell's functional assessment, on December 7, 2006 a second state agency reviewer reiterated the earlier state agency reviewer's assessment. (R.334-340.)

At the November 15, 2007 administrative hearing, the plaintiff testified that for the preceding year or so she had been trying to work in a sheltered workshop environment at Friendship Industries in Harrisonburg; however, this effort she found to be stressful and difficult due to her diabetes and depression. (R.30-31,37-39,53-55.) Previously she had a job "sitting and watching" an elderly lady who was afraid to be alone at night. (R.31-32,57-58.) As the ALJ concluded, neither of these work efforts constituted substantial gainful activity. *See* 20 C.F.R. § 404-1520(b) and § 416.920(b).

With the "understand[ing] that it's under different conditions than normal competitive employment," the vocational witness (Ms. Patricia Versa) described the plaintiff's work at Friendship Industries as exertionally light and unskilled (R.82-83.) As regularly performed, the

---

[4] To determine the exertional requirements for occupations in the national economy, jobs are classified by the agency as *sedentary*, *light*, *medium*, *heavy*, and *very heavy*. 20 C.F.R. § 404.1567 and § 416.967.Light work requires lifting no more than 20 pounds and frequently carrying 10 pounds, and a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b). To be considered capable of performing a full range of light work, the relevant elaboration in Security Ruling ("SSR") 83-10 provides, an individual must be able to stand and walk, off and on, for a total of approximately 6 hours of an 8-hour workday.

6

vocational witness described her work as an aide/companion as exertionally light and semi-skilled. (R.83.)

As her testimony and earnings record show, the plaintiff's past relevant work included principally work for approximately ten years (1992-2002) as an eviscerator in a poultry plant and for approximately three years (2002-2005) as a home care aide under the Virginia Medical Assistance Services program. (R.31-36,59-60,160-164,196-199.) The vocational witness categorized the poultry plant work as exertionally light and unskilled and the home health aide work as exertionally medium and semiskilled. (R.83-85.)

In addition to the plaintiff's testimony concerning her work and health-related history, she described her lifting, carrying and walking limitations related to her various health-related problems. (R.43,51.) Supporting testimony was proved by the plaintiff's social worker (Ms. Rebecca Driver) and the Rehabilitative Services Coordinator at Friendship Industries (Mr. Kent Stoneburner). (R.43,51,63-64,65-80.) *Inter alia* each testified about the plaintiff's significant work efforts despite obvious and observed difficulty dealing with stress, interpersonal relationships, depression and a persistently slow work speed. (*Id*.)

Subsequent diagnostic and treatment records from the Free Clinic, variously dated between November 22, 2006 and January 5, 2010, were submitted to the Appeals Counsel. (R.349-583.) These records document the plaintiff's ongoing treatment for a number of transient and chronic conditions, including type-2 diabetes with an attendant diabetic retinopathy,

glaucoma ("stable on medication"), hypertension, depression, polycysthemia, hyperlipodemia, chronic obstructive pulmonary disease, an arthritic left shoulder, and a cognitive disorder. (*E.g.*, R.499-506,518-519,527,550-565,568-570,571-583.)

V.     **Analysis**

In her appeal, the plaintiff in essence assigns error to the ALJ's finding that she retained the functional ability to perform her past work as an aide/companion[5] and to his failure to use the Medical-Vocational Guidelines, 20 C.F.R., pt. 404, subpt. P, appx.2 ("the grids").[6] Given the plaintiff's advanced age, limited education and lack of transferrable skills (R.82-86), the issue before the court, therefore, is a narrow one. If, as the plaintiff argues, substantial evidence does not supports the ALJ's finding that she retained the physical ability to perform work at a light exertional level, "which does not involve production rate work," the administrative decision must be reversed. As with all aspects of an ALJ's decision, his functional capacity determination must be supported by substantial evidence. *Hays v. Sullivan*, 907 F.2$^d$1453, 1456 (4$^{th}$Cir. 1990).

In determining whether such substantial evidence supports the decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether he sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v.*

---

[5] At the hearing the vocational witness testified that the *Dictionary of Occupational Title*s classifies this job is exertionally light and semi-skilled. (R.83.)

[6] These matrices utilize the "four factors identified by Congress --- physical ability, age, education, and work experience --- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)(footnote omitted).

*Akers*, 131 F.3<sup>d</sup>438, 439-440 (4<sup>th</sup>Cir. 1997). This is particularly so in the case now before the court, given the plaintiff's vocational profile, her functional limitations shown by Dr. Newell's consultive examination findings and conclusions, and the hearing testimony provided by an experienced rehabilitation counselor (Kent Stoneburner) concerning the plaintiff's observed multiple work-related limitations.[7] In combination, this evidence patently demonstrates that the plaintiff has made a *prima facie* showing of her disability within the meaning of the Act. *See Hall v. Harris*, 658 F.2<sup>d</sup>260, 264 (4<sup>th</sup>Cir. 1981); 20 C.F.R. pt. 404, subpt. P, appx 2, rule 201.02.

Based on his experience and on clinical testing that demonstrated bilateral paravertebral muscle spasms and attendant limitation in dorsolumbar motion, Dr. Newell concluded these demonstrated impairments physically restricted the plaintiff to a limited range of light work activity. (R.292,295.) This consulting physician's findings and opinions were, however, "reject[ed] by the ALJ, ostensibly due to absence of a "longitudinal" treatment record, "limited" physical findings, a "routine and conservative" treatment history, and her past work sitting with an elderly woman who was afraid to stay alone at night.[8] (R.18,19,57-58.)

Contrary to the conclusory assertions of the state agency reviewers upon which the ALJ relies, Dr. Newell's functional assessment is completely consistent with his clinical findings. Moreover, the reasons given by the ALJ for rejecting this examining physician's opinions are both limited and weak. Therefore, on basis of the record as a whole one is compelled to

---

[7] *See* R.274.

[8] At the hearing, the plaintiff testified that she had done this job for "maybe about a year" and had been paid "50 bucks for every two weeks." (R.57-58.)

9

conclude that the ALJ in this case appears to have substituted his judgment for that of Dr. Newell and that the ALJ's conclusion is not supported by substantial evidence.

One is compelled to reach the same conclusion with respect to the ALJ's rejection of the vocationally-related testimony of Becky Driver (the plaintiff's social worker) and of Kent Stoneburner (the vocational rehabilitation coordinator at Friendship Industries). Based on their personal observations and the reports of others over a significant span of time, these professionals testified about the plaintiff's inability to handle stress, her irritability, and her difficulties with interpersonal relationships. (R.66-69,71,73-75,78-79.) Additionally, Mr. Stoneburner testified about the results of his performance assessment of the plaintiff's work-related abilities and his professional opinion that her work performance was not consistent with an ability to engage in a competitive employment environment due to her persistently slow work speed, inability at varying times to work at all, and need for special work accommodations. (R.69-80; *see* 246-253,274.)

In his decision the ALJ dismissively rejected this evidence on the ground that the Friendship Industries assessments was principally focused on the plaintiff's potential ability to perform a production job in a competitive work environment. (R.19-20). Additionally, he based this rejection on the lack of a "longitudinal" treatment record, the plaintiff's previous work in a non-sheltered work sitting with an elderly woman at night, and as "opinions on an issue reserved for the Commissioner." (*Id*.)

By doing so, the ALJ rejected highly relevant evidence of the plaintiff's overall condition. By doing so, he similarly rejected significant evidence, which corroborated her subjective complaints and testimony, and he rejected evidence, which was highly relevant to a determination of whether the true scope of the plaintiff's vocational limitations was either presented to the vocational witness or shown in the record. *See Williams v. Barnhart*, 2005 U.S. Dist. LEXIS 24380, *12, 107 Soc. Sec. Rep. Services 158 (WDVa, 2005). As with the ALJ's stated basis to reject Dr. Newell's opinions, the reasons given by the ALJ for rejecting the observations and testimony of Ms. Driver and Mr. Stoneburner are equally limited and weak. Moreover, they are neither conclusory statements unsupported by fact nor are they statements of the ultimate issue reserved to the Commissioner. As a consequence, for a second time in this case the ALJ's rejection of relevant evidence in the record is not supported by substantial evidence.

At the hearing, both the ALJ and the vocational witness agreed that in combination the plaintiff's advanced age, her limited education and her lack of transferable skills would result in her being "considered disabled under the grid rules" unless substantial evidence demonstrated her ability to engage in competitive work at more than a sedentary exertional ability. (R.82,86-86,88.) As outlined herein, such substantial evidence is lacking, and the plaintiff meets the agency's definition of disability within the meaning of the Act as of her alleged onset date.

## VI.    Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. Substantial evidence does not support the ALJ's rejection of the findings and conclusions of Dr. Newell;

3. Substantial evidence does not support the ALJ's rejection of the testimony of Betsy Driver or Kent Stoneburner;

4. The ALJ's- non disability finding is not supported by substantial evidence;

5. The plaintiff has met her burden of proving a disabling condition as alleged in her claim by application of grid rule 201.02;

6. The final decision of the Commissioner should be reversed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the plaintiff, DENYING the Commissioner's motion for summary judgment, and REMANDING this case solely for the purpose of calculating and paying benefits consistent with this report and recommendation.

Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the

receipt of a notice of award of benefits from the agency; provided, however, any such extension of time would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII. Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 26th day of January 2011.

                                               /s/ *James G. Welsh*
                                              United States Magistrate Judge